UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE REED, #101029,

                Petitioner,

                                          CASE NO. 2:10-CV-13263

v.                                    HONORABLE VICTORIA A. ROBERTS

HUGH WOLFENBARGER,

                Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.**      **Introduction**

Michigan prisoner George Reed ("Petitioner") filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Petitioner was convicted of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and two counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.110a(2), following a jury trial in the Oakland County Circuit Court in 2003.  He was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.10, to four to 30 years imprisonment on the assault conviction, a concurrent term of four to 20 years imprisonment on the felon in possession conviction, and consecutive terms of two years imprisonment on the felony firearm convictions to be served concurrently with each other.

In his pleadings, Petitioner raises claims concerning the bind-over decision, the lack of a

_____

[1]At the time he instituted this action, Petitioner was confined at the Macomb Correctional Facility.  He was released on parole on August 15, 2012.

polygraph examination, the denial of his request for self-representation, the admission of a police car video, the jury instructions, the admission of a prior conviction, the non-disclosure of impeachment evidence, and the effectiveness of trial counsel. Respondent filed an answer to the petition contending that it should be denied.

The Court finds that Petitioner is not entitled to federal habeas relief on his claims and denies the petition. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from the non-fatal shooting of Elmer Davis outside their apartment complex in Pontiac, Michigan on January 7, 2003. The Court adopts the statement of facts set forth by Respondent to the extent it is consistent with the record. Those facts are as follows:

> Petitioner's convictions resulted from his having shot Elmer Davis in the neck, paralyzing Mr. Davis from the chest down. Mr. Davis – who was a neighbor of Petitioner's in the same apartment complex – testified that he was sitting in his car in the apartment complex parking lot, smoking marijuana and drinking malt liquor. (Trial Transcript (TT) 05/12/03, 89, 92-93, 105). Mr. Davis was getting ready to leave in his car when a car pulled in front of his. When Petitioner – a passenger in the car that had just pulled in – got out of the car, he came over to Mr. Davis and according to Mr. Davis "checked him" and hollered at him because Mr. Davis had waived his hands at the other vehicle to let him get out. (TT 05/12/03, 93-94, 106). Petitioner seemed offended, and Mr. Davis was telling him "it ain't about all that. I just want to get out," after which point Petitioner left and Mr. Davis "thought it was all over." (TT 05/12/03, 94). Mr. Davis remained in his car, listening to the radio, when he hears a gunshot and discovers that he himself was shot in the neck. (TT 05/12/03, 94). Mr. Davis testified that he did not own a gun, had never carried a gun, and did not have a gun in his car that day. Nor did he ever pull a gun on Petitioner or anyone else. (TT 05/12/03, 100). When Mr. Davis was shown a gun that had been entered into evidence – a gun Petitioner claimed he removed from Mr. Davis's possession after the shooting – he indicated that the gun was not his, and that he had never seen the gun prior to viewing it in court at that moment. (TT 05/12/03, 101).

After he was shot, the next thing Mr. Davis remembered was waking up in the hospital, after surgery had been performed and after he was told he had been "passed as dead" but had been brought back. (TT 05/12/03, 95-96). Mr. Davis remained in the hospital for approximately a month and a half, and as a result of the shooting was paralyzed from the chest down. (TT 05/12/03, 97).

Pamela Tige, the victim's live-in girlfriend, testified that she had never seen a gun in their apartment, nor had she ever come across one when cleaning their apartment. (TT 05/12/03, 114, 119). Ms. Tige also testified that she had never seen the victim with a gun. (TT 05/12/03, 120). When Ms. Tige was shown the gun that had been entered into evidence, she testified that she had never seen it before. (TT 05/12/03, 120-121).

Peter Durham, Petitioner's nephew, testified that he and his girlfriend Candice Carter had dropped Petitioner off at the apartment complex on the date in question, after he saw his uncle in court that morning where both were attending separate landlord/tenant hearings. (TT 05/12/03, 127-128, 131). Mr. Durham testified that when he pulled in front to drop off Petitioner, he parked in front of three vehicles, and someone was in one of the vehicles. (TT 05/12/03, 132). After Petitioner left Mr. Durham's vehicle, Mr. Durham saw Petitioner walk to the parked vehicle and exchange words with the occupant, at which time he also heard some yelling. (TT 05/12/03, 133-134, 153). After a few words were exchanged, Petitioner kept walking to his apartment. Mr. Durham never saw Petitioner lean inside of the parked car nor go inside of the car. (TT 05/12/03, 134-135). Mr. Durham turned his car around to leave, and as he came back around he saw Petitioner walking back towards the parked car. (TT 05/12/03, 135-137). Mr. Durham kept driving, and as he looked toward the parked car he saw Petitioner and the occupant of the car "struggling," with Petitioner remaining outside of the car while the occupant was inside. (TT 05/12/03, 138-139, 142). Mr. Durham drove on because he did not want to be involved and he thought they could take care of it between themselves. (TT 05/12/03, 138-139). Mr. Durham also testified that he never saw a gun on the occupant of the car, nor did he ever see the person leave the vehicle and point a gun at anyone. (TT 05/12/03, 139). Mr. Durham testified that after Petitioner initially spoke with the occupant of the car and then went to his apartment, Petitioner was not in any danger, nor did Mr. Durham feel he himself was in danger because the occupant was not coming at him at all. (TT 05/12/03, 164-165).

Mr. Durham stated that he saw someone get shot, and in his rear view mirror saw his uncle calling him back. When he went back he saw Petitioner take a gun out of his pocket. (TT 05/12/03, 140-141). After the shooting, Mr. Durham and Petitioner went to Petitioner's apartment where Petitioner called 911. (TT 05/12/03, 143).

Candace Carter – Mr. Durham's girlfriend – testified that she was with Mr. Durham and Petitioner when Mr. Durham dropped Petitioner off at his apartment. (TT 05/12/03, 169). When Mr. Durham pulled into the parking lot, Ms. Carter noticed a

3

man in a parked car who was blowing his horn and moving his arms "like he was upset" and trying to get their attention. (TT 05/12/03, 170). Petitioner then exited Mr. Durham's vehicle and went to the parked car and started talking to the man. (TT 05/12/03, 170). The occupant cracked his window, and Petitioner signaled to Mr. Durham that "it was okay, that we can leave," at which point Mr. Durham started to drive off. (TT 05/12/03, 171). Ms. Carter testified she did not see what went on behind them, that she did not look, but that when they pulled back around she saw Petitioner pressed against the parked car as though "he had the guy or the guy grabbed him." (TT 05/12/03, 171-172). She did not see any portion of the occupant's body outside of the car, and as they drove past the car, she heard a gunshot and then Petitioner yelled for them to come back. (TT 05/12/03, 172-173). Petitioner said that he needed a cell phone to call the police because the guy pulled a gun on him and he had to shoot him. (TT 05/12/03, 173). Ms. Carter did not see any guns at that time. (TT 05/12/03, 173). Ms. Carter also testified that she never saw the occupant of the car get out of the car, nor did she see him point a gun at anyone or make any gestures that would lead her to think he had a gun. (TT 05/12/03, 175, 178).

Officer John Wood responded to the shooting. When he spoke with Petitioner, Petitioner stated that he shot the victim, and pointed to two guns sitting on the television. (TT 05/12/03, 188-189). Petitioner told Officer Wood that when his nephew brought him home, he had words with the victim, and that the victim was upset and reached in his coat as if he were going to pull out a gun. At that point, Petitioner ran to his house and got his gun and came back out again and started to tussle with the victim. (TT 05/12/03, 189). Petitioner said he was trying to hold the victim's arm and saw a gun and then he told the victim he had a gun also; when Petitioner could not physically hold the victim's arm anymore, he fired. (TT 05/12/03, 189-190). Petitioner never told Officer Wood that the victim got out of the car or that he got out of the car and pointed a gun at him. Nor did Petitioner ever indicate the victim came to his door. (TT 05/12/03, 190). With respect to the weapons, Petitioner told him the 9mm was his weapon, and that the other gun was the one the victim had, and that Petitioner had taken the gun off the victim and brought it to the house. (TT 05/12/03, 191). The second gun was a 25 caliber semi-automatic, and the gun was missing the push rod and a spring, rendering it incapable of being fired. The gun did not have a magazine or any bullets inside of it. (TT 05/12/03, 194-195). At the conclusion of Officer Woods' testimony, the jury watched a videotape of the conversation that occurred in the squad car between Petitioner and Mr. Durham.

Officer Robert Kotelas testified that when the two guns were tested for fingerprints, no fingerprints were found. (TT 05/13/03, 10-11).

Against the advice of defense counsel, Petitioner chose to testify on his own behalf. (TT 05/13/03, 22). Petitioner testified that when his nephew – Mr. Durham – drove him home and parked, he heard a lot of yelling from the victim who was "ranting and

4

hollering" from his parked car. (TT 05/13/03, 26). Petitioner went up to the victim – who he knows from the apartment complex – and heard him cursing and saying that the car was blocking him in. (TT 05/13/03, 27). Petitioner told the victim he was not blocked in, and then the victim told him if he "didn't get him the f--- away from there, that he would shoot him, meaning my nephew." (TT 05/13/03, 28-29). Petitioner said the victim was "gesturing up under his shirt," leading Petitioner to believe he had a weapon underneath, although Petitioner did not see a weapon at that time. (TT 05/13/03, 29). Petitioner stated that he backed away from the victim's car and then "hollered over at my nephew" and said "Peter, go, go." (TT 05/13/03, 29). Petitioner testified that the victim made a gesture as if he was going to open the door, so Petitioner took off running. (TT 05/13/03, 29). Petitioner went to his apartment and looked back to make sure the victim was not behind him. He saw Mr. Durham's car pull away and was "satisfied that he was out of harms way" and then went to a chair inside his door to retrieve a gun he kept there. (TT 05/13/03, 30-31). Petitioner put the gun in his jacked pocket and went back outside on the sidewalk, waiting for his nephew to come. He saw the victim still sitting in his car. (TT 05/13/03, 31).

Petitioner testified that he looked over at the victim and said "Mo, this don't make sense, you know, let's talk about this," and that the victim said okay and nodded for him to come to the car. (TT 05/13/03, 31). Petitioner stated that the victim was calm as he went over to the car, but as he approached the car the victim saw Mr. Durham driving by and said "here this motherf----- is again" and the victim put his hand up under his shirt so Petitioner grabbed his hand. (TT 05/13/03, 32). Petitioner then took the gun out of his picket and put it up against the victim's forehead and told the victim to let go. The victim did not let go, and Petitioner told the victim he did not want to shoot him, and tapped him on the face with his gun approximately five or six times. (TT 05/13/03, 32-33). As he was tapping the gun on the victim's face, Petitioner saw that one of the victim's hands had gotten free and he hit Petitioner's arm and pulled him up against the car. (TT 05/13/03, 33). As the two men pulled back and forth, Petitioner for the first time saw a gun on the victim. (TT 05/13/03, 34). Petitioner testified that he "didn't want to shoot him in his head or his face or his chest" and he "thought about trying to shoot down there" but he could not so he caught himself "trying to shoot him in the shoulder," and then he shot him. (TT 05/13/03, 35). Petitioner said that the victim had a gun in his hand, and he removed the gun from the victim. (TT 05/13/03, 36). Petitioner then called 911 and told them he had just shot a guy. (TT 05/13/03, 37).

On cross-examination, Petitioner admitted that he did not tell the truth when he called 911. On the 911 tape that was played for the jury, Petitioner said he shot the victim because the victim had gotten out of the car, with a gun, and ran after him. (TT 05/13/03, 49-51). Petitioner's claim during the 911 call that he got his own gun because he was being chased by the victim – who was armed – was not true. (TT 05/13/03, 51). At trial, Petitioner testified that he went to his house to get his gun because he saw his nephew turn around and "knew he was headed back into danger."

5

(TT 05/13/03, 54). Petitioner claimed that the error in his call to 911 was due to "excitement." (TT 05/13/03, 55-56). Petitioner did not deny that when Mr. Durham sat with him in the squad car, Petitioner told him to "sit in here with me, dammit" so they could get the story together. (TT 05/13/03, 57-58). Petitioner did not deny that when Mr. Durham asked him what he wanted him to say, Petitioner told him to say that he saw the man get out of the car and pull a gun when Petitioner left to go to the house. (TT 05/13/03, 59). Petitioner claimed at trial that he needed to tell Mr. Durham what to say because his nephew "is slow." (TT 05/13/03, 63-64). Petitioner did not deny that he told Officer Wood on the way to the police station that the victim got out of the car and pulled out a gun, so Petitioner ran and then came back and "shot his a--." (TT 05/13/03, 67-69, 71).

Resp. Answer, pp. 3-8.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the bind-over decision, the lack of a polygraph examination, the denial of his request for self-representation, the admission of a police car video, the jury instructions, and the admission of a prior conviction, and the effectiveness of trial counsel. The Michigan Court of Appeals denied relief on those claims and affirmed his convictions. *People v. Reed*, No. 249571, 2004 WL 2291349 (Mich. Ct. App. Oct. 12, 2004) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied in a standard order. *People v. Reed*, 472 Mich. 939, 698 N.W.2d 397 (2005).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising claims concerning the non-disclosure of evidence, the effectiveness of trial and appellate counsel, and the validity of his sentence. Citing Michigan Court Rule 6.508(D)(3), the trial court ruled that Petitioner was not entitled to relief and denied the motion. *People v. Reed*, No. 03-188712-FC (Oakland Co. Cir. Ct. April 24, 2008) (unpublished). The trial court also denied reconsideration. Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals raising claims concerning the trial court's denial of his motion for rehearing and the non-

disclosure of impeachment evidence, which was denied because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Reed*, No. 294253 (Mich. Ct. App. Feb. 16, 2010) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising only the impeachment evidence claim, which was similarly denied. *People v. Reed*, 487 Mich. 856, 784 N.W.2d 805 (2010).

Petitioner thereafter filed his federal habeas petition, raising the following claims:

I. It was an abuse of discretion for him to be bound over on the basis of a preliminary examination where the complaining witness was not present and did not testify.

II. He was denied due process of law when the polygraph examiner refused to administer the polygraph.

III. He was denied his constitutional right to represent himself.

IV. The trial court clearly erred when it allowed the entire un-redacted tape from the police car to be admitted into evidence.

V. The trial court erred when it gave an un-requested instruction on manslaughter and did not mention the lesser included offense.

VI. His prior conviction is dated February 2, 1987 and evidence of a conviction over 10 years is not admissible.

VII. His fundamental right to due process was violated by the non-disclosure of evidence that impeached the credibility of a key prosecution witness where potentially impeaching evidence was never presented to the jury for consideration.

VIII. Ineffective assistance of trial counsel.

Respondent filed an answer to the petition, contending that it should be denied because the claims lack merit and/or are barred by procedural default.

7

III.     **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the

following standard of review for federal habeas cases filed by state prisoners:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>           application of, clearly established Federal law, as determined by the
>           Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of
>           the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law if it "'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to

'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or

8

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on

9

numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.    <u>Discussion</u>

### A.    <u>Bind-Over Claim</u>

Petitioner first asserts that he is entitled to habeas relief because he was improperly bound over for trial where the victim did not appear for the preliminary examination. Respondent

10

contends that this claim is not cognizable upon habeas review.

The Michigan Court of Appeals denied relief on this claim, finding that it lacked merit. The court explained:

> Defendant first argues that he is entitled to a new trial because the complaining witness did not testify at the preliminary examination. MCL 766.4 requires the examination at the preliminary examination of those witnesses offered in support of the prosecution. It is well settled that the testimony of the complainant is not necessarily required at every preliminary examination if sufficient other evidence is produced. *See People v Meadows*, 175 Mich App 355, 358-359; 437 NW2d 405 (1989). Defendant does not contend that the other evidence produced was insufficient to support the bindover. Nonetheless, claims concerning the sufficiency of the evidence at a preliminary examination are rendered harmless by the presentation at trial of sufficient evidence to convict. *People v McGee*, 258 Mich App 683, 693; 672 NW2d 191 (2003).

*Reed*, 2004 WL 2291349 at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Supreme Court held that the federal Constitution does not require that a probable cause hearing be conducted prior to a criminal trial. *Gerstein v. Pugh*, 420 U.S. 103, 119, 125 n. 26 (1975). Accordingly, the bind-over decision constitutes a state law issue which does not implicate a federal constitutional right and is not subject to review in a habeas proceeding. *See Schacks v. Tessmer*, No. 00-1062, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (unpublished) (refusing to review state court determination that second-degree murder conviction rendered bind-over sufficiency of the evidence challenge moot); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D. Mich. 2004) (denying habeas relief on state prisoner's claim that there was insufficient evidence to bind him over for trial); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991)

11

(ruling that habeas relief is not available for perceived violations of state law).[2]  Habeas relief is

not warranted on this claim.

### B.    Polygraph Claim

Petitioner next asserts that he is entitled to habeas relief because he was not given a

requested polygraph examination, even though the trial court ordered that one be conducted, when

the examiner determined that he could not be truthful.  Respondent contends that this claim is not

cognizable upon habeas review.

The Michigan Court of Appeals denied relief on this claim, finding that Petitioner was not

entitled to a polygraph examination.  The court stated:

> Defendant also argues that he was denied due process of law when a polygraph
> examiner refused to administer a polygraph. We disagree.
>
> Before trial, defendant demanded a polygraph test "to support his assertion that the
> shooting done here was in self-defense, with the aim that the charges against him
> would be dropped if he passed the test." The court arranged for the administration
> of the test. The polygraph examiner refused to administer the test, concluding after
> two interviews with defendant that "defendant was not justified in shooting the
> victim whether he had a gun or not due to the fact that his actions did not amount
> to self-defense."
>
> Defendant has cited no authority to support a conclusion that he was entitled to a
> polygraph examination. Although MCL 776.12(5) [sic] states that a defendant shall
> be given a polygraph examination if the defendant requests it, the statute by its own
> language applies only to defendants charged with a violation of specified criminal
> sexual conduct offenses. Defendant was not charged with a CSC offense. Thus,
> defendant had no right to a polygraph examination.[FN1]
>
> FN1.  Defendant relies on *People v Reagan*, 395 Mich 306; 235 NW2d 581 (1975)
> and *People v Wyngaard*, 462 Mich 659; 614 NW2d 143 (2000), in support of his

---

[2]Even under Michigan law, any error in the preliminary examination proceeding is
considered harmless once a valid conviction has been obtained.  *People v. Hall*, 435 Mich. 599,
610-12, 460 N.W.2d 520 (1990).  Petitioner does not contest the sufficiency of the evidence
presented at trial to support his convictions.

12

assertion that "due process requires at the very least Defendant is entitled to have a properly conducted examination." However, these cases do not involve the issue presented in this case and are not relevant to the issue presented.

*Reed*, 2004 WL 2291349 at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Supreme Court has never held that, as a constitutional matter, polygraph evidence must be admitted in a criminal trial or that polygraph evidence is reliable. *See United States v. Scheffer*, 523 U.S. 303, 309 (1998); *United States v. Thomas*, 167 F.3d 299, 308, n. 8 (6th Cir. 1999) (noting that the Supreme Court in *Scheffer* "acknowledged that there is no consensus in the scientific community that polygraph evidence is reliable, and that there is no constitutional right to have polygraph evidence admitted at trials"). The admissibility of polygraph evidence is generally a state law matter which does not raise issues of constitutional magnitude cognizable on habeas review. *See Bolton v. Berghuis*, 164 F. App'x 543, 550 (6th Cir. 2006); *Maldonado v. Wilson*, 416 F.3d 470, 477-78 (6th Cir. 2005) (collecting cases); *see also Poole v. Perini*, 659 F.2d 730, 734-35 (6th Cir. 1981). Simply put, there is no constitutional right to a polygraph examination. *See Luckett v. Berghuis*, No. 04-CV-73037-DT, 2006 WL 1779383, *2 (E.D. Mich. June 26, 2006) (citing *Scheffer* and ruling that a habeas petitioner had no constitutional right to take a polygraph examination to establish his innocence). Accordingly, to the extent that Petitioner claims that he was entitled to a polygraph examination under state law, he is not entitled to relief from this Court because such a claim is not cognizable upon federal habeas review.

Additionally, to the extent that Petitioner asserts that he was denied due process or his right to present a defense by the trial court's actions, he is still not entitled to habeas relief. First, as

explained by the Michigan Court of Appeals, he was not entitled to a polygraph examination under state law because he was not charged with criminal sexual conduct. Second, a polygraph examination is generally not admissible at trial due to its unreliability. *See, e.g., People v. Ray*, 431 Mich. 260, 430 N.W.2d 626 (1988). Thus, even when a defendant passes a polygraph examination, the results are inadmissible at trial under Michigan law. *See People v. Phillips*, 469 Mich. 390, 397, 666 N.W.2d 657 (2003); *People v. Jones*, 468 Mich. 345, 354, 662 N.W.2d 376 (2003). Because any results from a polygraph would have been inadmissible, Petitioner cannot establish that he was denied the right to present a defense by the trial court's actions. Lastly, Petitioner has not shown that the results of the polygraph would have been favorable. Conclusory allegations are insufficient to justify habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). Petitioner has failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

### C.     <u>Self-Representation Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the trial court denied his request to represent himself at trial. Petitioner expressed a lack of confidence in appointed counsel and brought up the possibility of self-representation on the first day of trial. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution grants a criminal defendant the right to self-representation if such a choice is voluntarily and intelligently made. *Martinez v. Court*

14

*of Appeal of California*, 528 U.S. 152, 153 (2000); *Faretta v. California*, 422 U.S. 806, 819 (1975). A waiver of the right to counsel must be voluntary, knowing and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Faretta*, 422 U.S. at 835; *Jones v. Jamrog*, 414 F.3d 585, 593 (6th Cir. 2005). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Tovar*, 541 U.S. at 92. Additionally, a criminal defendant who seeks to proceed *pro se* must generally be aware of the risks of self-representation so that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. The right to counsel and the right to defend oneself are viewed as correlative rights in that waiver of one necessarily constitutes an assertion of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970); *see also United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2005).

The Michigan Court of Appeals denied relief on this claim, ruling as follows:

Next, defendant asserts that he was denied his constitutional right to represent himself at trial. Although engaging in a de novo review of the entire record, this Court does not disturb a trial court's factual findings regarding a knowing and intelligent waiver of Sixth Amendment rights "unless that ruling is found to be clearly erroneous." The meaning of knowing and intelligent is a question of law. We review questions of law *de novo*. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004).

The right to counsel in a criminal proceeding is a substantive right guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 13. Conversely, the United States Supreme Court has held that the right of self-representation is implicitly guaranteed in the Sixth Amendment of the United States Constitution. *Iowa v Tovar*, 541 US __; 124 S Ct 1379, 1387; 158 L Ed 2d 209 (2004); *Faretta v California*, 422 US 806, 819-820; 95 S Ct 2525; 45 L Ed 2d 562 (1975). The right of self-representation under Michigan law is expressly secured by both constitution and statute. Const 1963, art 1, § 13; MCL 763.1. *Williams, supra* at 641; *People v Adkins* (After Remand), 452 Mich 702, 720; 551 NW2d 108 (1996); *People v Dennany*, 445 Mich 412, 427; 519 NW2d 184 (1994)

15

(opinion by Griffin, J.). However, the right to proceed without counsel, while constitutionally protected, is not absolute. *Dennany, supra* at 427. Rather, the determination whether self-representation is appropriate is within the discretion of the trial judge. *Adkins, supra* at 721 n 16, citing *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). Before granting a defendant's request to proceed *in propria persona*, the trial court must determine that (1) the defendant's request is unequivocal, (2) that the defendant is knowingly, intelligently, and voluntarily asserting his right, and (3) "that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Id.* at 367-368. The court should indulge every reasonable presumption against waiver of the right to counsel. *Adkins, supra* at 721. Additionally, MCR 6.005 imposes a duty on the trial court to inform the defendant of the charge and penalty he faces, advise him of the risks of self-representation, and offer him the opportunity to consult with retained or appointed counsel.

Defendant concedes that the trial court complied with MCR 6.005, but contends that the court failed to comply with *Anderson*, thus entitling him to a new trial. We disagree.

The trial court engaged in colloquy with defendant before ruling that defense counsel would continue to represent defendant. When defendant's statements to the court are examined in context, it becomes evident that his request to proceed pro se was essentially an afterthought to an expressed desire that appointed defense counsel be removed from the case. When the trial court indicated that it would not appoint another attorney on the day of trial, defendant then asked that he be allowed to represent himself. On questioning by the court, defendant acknowledged that "it's a terrible thing" to represent yourself in a criminal trial. The trial court noted the seriousness of the charge and expressed his concern that defendant was not competent to represent himself. When the trial court stated that defense counsel would represent defendant, defendant stated, "okay, but I can't get a fair trial." In its colloquy with defendant, the trial court substantially complied with the Anderson requirements. Defendant did not unequivocally state that he wished to represent himself. Rather, it appears that defendant was suggesting that self-representation was the lesser of two evils, the other being represented by counsel that defendant did not feel was adequately representing him. Given the circumstances, the court properly indulged every reasonable presumption against waiver of the right to counsel and did not improperly deny defendant's request for self-representation. *Dennany, supra* at 446.

*Reed*, 2004 WL 2291349 at *2-3.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial court did not abuse its

16

discretion nor violate Petitioner's constitutional rights in denying his request for self-representation. Petitioner never expressed any dissatisfaction with defense counsel until the first day of trial. A request for self-representation on the day of trial is untimely. *See, e.g., United States v. Trujillo*, 376 F.3d 593, 606-07 (6th Cir. 2004) (request for substitute counsel on day of trial is untimely); *United States v. Wilhite*, 108 F. App'x 367, 369 (6th Cir. 2004). While Petitioner claimed that counsel was not representing him well, the record shows that counsel met with him before trial, investigated his case, and pursued a pre-trial motion. There is no indication in the record that counsel was ill-prepared for trial. Additionally, the state courts reasonably determined that Petitioner's request for self-representation was not unequivocal and that allowing him to proceed *pro se* would be detrimental to the proceedings. The charges in the case were serious and Petitioner was not highly-educated nor trained in the law. Petitioner even acknowledged that self-representation was not a good idea. Given such circumstances, the trial court acted within its discretion in requiring Petitioner to proceed with the assistance of appointed counsel. Habeas relief is not warranted on this claim.

### D. <u>Admission of Police Recording Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting the un-redacted police car recording and a transcript of the recording. Respondent contends that this claim is barred by procedural default, not cognizable, and/or lacks merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied

17

upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on this claim. In denying relief, the court relied upon the failure to object at trial. *See Reed*, 2004 WL 2291349 at *3. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, Petitioner alleges ineffective assistance of trial counsel as cause to excuse this procedural default. Petitioner, however, cannot establish that trial counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), or that he suffered actual prejudice, as this claim lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see Wynne v. Renico*, 606

19

F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner makes no such showing. As explained by the Michigan Court of Appeals in reviewing this claim for plain error, *Reed*, 2004 WL 2291349 at *3, the police car recording and transcript were properly admitted as evidence of Petitioner's statements to his nephew and to a police officer who was speaking to others outside the police car. Additionally, even if the trial court erred in some fashion, Petitioner has neither alleged nor established that he was prejudiced by the admission of the recording or the use of the transcript. In other words, he has not shown that the admission of those materials rendered his trial fundamentally unfair trial.[3] Petitioner has thus failed to establish cause or prejudice to excuse his procedural default.

Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –

---

[3]Moreover, to the extent that Petitioner asserts that the trial court erred in admitting the materials under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner makes no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

### E.      Jury Instruction Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred by *sua sponte* instructing the jury on manslaughter without instructing the jury on the lesser offense of felonious assault. Respondent contends that this claim is not cognizable and lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72. The failure to give an instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). A failure to instruct does not deprive a petitioner of fundamental fairness when the instructions as a whole adequately present the defense theory to the jury. *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals denied relief on this claim, explaining:

Defendant also argues that the trial court erred by *sua sponte* instructing the jury on the offense of manslaughter without instructing the jury on other lesser included offenses. Jury instructions are reviewed in their entirety to determine if error requiring reversal occurred. *People v. Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000).

21

The factual premise for defendant's argument is erroneous. Contrary to defendant's suggestion, the trial court did not instruct the jury on the offense of manslaughter. Indeed, the victim did not die and a manslaughter instruction would clearly not be warranted. Rather, the trial court instructed the jury on the charged offense of assault with intent to commit great bodily harm less than murder. The court instructed the jury in relevant part:

> For the crime of assault with intent to murder, this means that the Prosecution must prove that the Defendant intended to kill. The Defendant's intent may be proved by what he said, what he did, how he did it or by all the other facts and circumstances which are in evidence.

The Defendant can only be guilty of the crime of assault with intent to commit murder if he would have been guilty of murder had the person he assaulted actually died. If the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the Defendant is not guilty of assault with intent to commit murder.

The trial court then explained the offense of manslaughter in the context of the offense of assault with intent to commit murder. The trial court did not instruct on the offense of manslaughter and, therefore, defendant's argument is misplaced.

Defendant suggests that if the jury had been instructed on the lesser offense of felonious assault it would have convicted him of this lesser offense in light of the evidence of self-defense and that defense counsel was ineffective for failing to request an instruction on felonious assault. However, a jury, or the judge in a trial without a jury, may only consider necessarily included lesser offenses, not cognate lesser offenses. *People v. Cornell*, 466 Mich 335, 359; 646 NW2d 127 (2002), citing MCL 768.32(1). Felonious assault is a cognate, not a necessarily included, lesser offense of assault with intent to commit murder. *People v. Vinson*, 93 Mich App 483, 485-486; 287 NW2d 274 (1979).

*Reed*, 2004 WL 2291349 at *4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial court properly instructed the jury on the elements of the charged offenses and other relevant matters. Contrary to Petitioner's claim, the trial court did not instruct the jury on manslaughter. Petitioner's claim challenging the manslaughter instruction is thus belied by the record.

22

Additionally, the trial court did not err or violate Petitioner's constitutional rights by declining to instruct the jury on felonious assault. The Supreme Court has declined to determine whether due process requires jury instructions on lesser included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). In *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Supreme Court ruled that a capital defendant is entitled to a lesser included offense instruction only when there is evidence to support it. The Supreme Court has since held that state courts are not constitutionally required to instruct capital case juries on crimes which are not lesser included offenses of the charged crime. *See Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998). The Sixth Circuit has interpreted *Beck* to mean that due process "does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). Even in capital cases, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser included offense. *See Hopkins, supra*. Cognate offenses such as felonious assault do not meet the definition of lesser included offenses. Accordingly, Petitioner's claim regarding the trial court's refusal to instruct the jury on felonious assault is not cognizable on federal habeas review.

Lastly, as explained by the Michigan Court of Appeals, an instruction on felonious assault was not appropriate under state law because felonious assault is a cognate lesser offense of assault with intent to commit great bodily harm less than murder. The jury instructions, as a whole, were sufficient to satisfy due process. Petitioner has not shown that the trial court's instructions rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### F.  Admission of Prior Conviction/Ineffective Assistance of Counsel Claim

23

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in allowing a prior felony conviction to be admitted into evidence, via stipulation, at trial. He relatedly asserts that trial counsel was ineffective for agreeing to the stipulation. Respondent contends that this claim lacks merit.

As noted, an alleged trial court error in the application of state evidentiary or procedural law is generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67–68. Such an error only rises to the level of a federal constitutional violation if it renders the proceeding so fundamentally unfair as to violate due process. *See McAdoo*, 365 F.3d at 494; *see also Wynne*, 606 F.3d at 871; *Bugh*, 329 F.3d at 512.

Additionally, in *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* at 788.

The Michigan Court of Appeals denied relief on this claim finding it to be without merit. The court explained:

> In a supplemental brief, defendant argues that the trial court erred by allowing the prosecutor to refer to defendant's prior felony conviction to establish an element of the felon in possession charge. We disagree.
>
> The parties stipulated that defendant had a prior felony conviction and that he was not eligible or allowed to be in possession of any type of firearm. In his opening statement, the prosecutor stated that, "There will be a stipulation in this case that on January 7, 2003, the Defendant had a prior felony conviction and was not eligible to even be in possession of a firearm on that day." The stipulation was later placed on the record.

The prosecution and the defense counsel may agree to stipulate that the defendant has been convicted of an unspecified prior felony in order to minimize any prejudice to the defendant. *See People v. Nimeth*, 236 Mich App 616, 627; 601 NW2d 393 (1999); *People v. Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). Defendant's suggestion that defense counsel failed to object to the prosecutor's statement is misplaced on the facts of this case. Had the parties not entered into the stipulation, the prosecutor would have introduced evidence of the existence and nature of the prior felony conviction. To the extent that defendant may argue that counsel was ineffective for stipulating to the prior conviction, defendant has not demonstrated a reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different. *People v. Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

*Reed*, 2004 WL 2291349 at *3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The trial court properly allowed Petitioner's prior conviction to be admitted into evidence because the prosecution was required to prove that Petitioner had a prior felony conviction in order to establish his guilt of the felon in possession charge. Consequently, the evidence of Petitioner's prior conviction was relevant and material. Petitioner has failed to establish that the admission of a prior conviction, through the parties' stipulation, was erroneous or that it rendered his trial fundamentally unfair. Moreover, counsel's conduct in agreeing to the stipulation was reasonable given the admissibility of the prior conviction and given that the stipulation minimized potential prejudice to Petitioner because it prevented the jury from hearing details of his prior conviction(s). Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### G.   Gun Evidence/Ineffective Assistance of Counsel Claim

Petitioner's final two claims concern the gun evidence and trial counsel's investigation of such matters. Petitioner asserts that the prosecution presented false police testimony about the gun evidence and that he was denied due process by the non-disclosure of evidence that would have

26

impeached the police testimony.  He also asserts that trial counsel was ineffective for failing to properly investigate this issue.  Respondent contends that both claims are barred by procedural default because Petitioner first raised these issues in his motion for relief from judgment and the state courts denied relief on procedural grounds.

As noted, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White*, 431 F.3d at 524.  The last explained state court judgment is used to make this determination.  *Ylst*, 501 U.S. at 803-05.  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Petitioner exhausted this claim in the state courts in his motion for relief from judgment and related appeals.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* MICH. CT. R. 6.508(D)(3).  The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under *Guilmette*, the

27

Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of post-conviction relief.

The state trial court clearly denied relief on this claim on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) in addressing Petitioner's claims and concluded that Petitioner had not shown good cause or actual prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise the issues on direct appeal of his convictions. *See Reed*, No. 03-188712-FC at *2-7. Accordingly, these claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner neither alleges nor establishes cause to excuse this procedural default. The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Moreover, as discussed *supra*, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability is warranted only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits.  *Id.* at 336-37.  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 528 U.S. at 484-85.

The Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims and reasonable jurists could not debate the correctness of the Court's procedural rulings.  Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal as any appeal cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).  This case is closed.

**IT IS SO ORDERED**.


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

29

Dated:  February 28, 2013

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and George Reed by electronic means or U.S. Mail on February 28, 2013.<br><br>S/Carol A. Pinegar<br>Deputy Clerk |